PETER M. RYERSON *v.* JAMES BOORMAN and others.

On a foreclosure bill, a general decree for the sale of all the mortgaged premises had been taken, and a *fi. fa.* for sale issued thereon; and the Sheriff had struck off the whole property at one bidding, for $15,000. Before a deed was given by the Sheriff, the defendant in the decree and execution filed a bill, stating that the property was worth $60,000, and consisted of distinct tracts; and, also, that a mistake had been made in the newspaper advertisement by which the descriptions of the different tracts were erroneously given; and prayed an order directing the Sheriff not to deliver the deed. The order was granted; and the sale was subsequently set aside, and an order made that the property be sold in parcels, if the defendant in the decree and execution so requested.

The bill, filed October 1847, states that on the 10th of August 1839, James Boorman, John Johnson, Daniel Ayres and Adam Norrie transferred to Peter M. Ryerson, the complainant, $17,500 of the stock of the North American Trust & Banking Co., of New York, at par value; that the complainant then gave them a bond and mortgage to secure the said sum and interest; and that, on the 21st October 1839, they transferred to the complainant $5,000 more of the said stock, at par value, and the complainant then gave them another bond and mortgage to secure the last mentioned sum with interest; both mortgages covering nearly the same property.

That the said Boorman, Johnson, Ayres and Norrie, on the 1st of July 1844, filed their bill to foreclose the said two mortgages; that the complainant thereupon employed counsel to defend the said suit, being advised and believing that he had a good defense, and that the said bonds and mortgages were invalid; that while said suit was pending he entered into negotiation with the said complainants therein to settle the said difficulties in an amicable manner; that, pending these negotiations, he delayed putting in his answer to the said bill in consequence of this negotiation, and that he was surprised by hearing that a decree had been taken in said suit by default, on the 2d day of April 1845, for $27,727 24, that being the full amount of the said principal and interest on the said two bonds and mortgages, and that execution had been issued on the said decree.

That he thereupon, shortly afterwards, saw Mr. James Boorman, one of the said complainants, who in consideration of the premises agreed, on the part of the said complainants, with him, Ryerson, to the purport and effect following, that is to say : that the whole claim of the complainants should be reduced to $20,-000 ; that this sum should be paid in instalments as follows : on the 1st of July 1846, $1,000 and the interest on $20,000 for six months ; on the 1st January 1847, $1,000 and the interest on the balance of the $20,000 remaining unpaid ; on the 1st of July 1847, $1,000 and the interest on such balance ; on the 1st of January 1848, $500 and interest on such balance ; on the 1st of July 1848, $500 and interest on such balance ; on the 1st of January 1849, $500 with interest on such balance ; on the 1st of July 1849, $500 with interest on such balance ; which would then reduce the amount to $15,000 ; and that this last sum should, upon payment of the interest thereon semi-annually, remain as a permanent debt during the life-time of the said Boorman, if he, Ryerson, should desire it ; and that he, Ryerson, should pay the costs of the said suit and a counsel fee of $20 to the solicitor of the said complainants in their said suit, and the costs of the Sheriff who had the said execution.

That the said Boorman then reduced the said agreement to writing, by addressing a letter which he then wrote in his, Ryerson's, presence, to Mr. Ogden, the solicitor of the complainants in their said cause, stating the substance of the said agreement, except that part relating to the sum of $15,000 not having to be called for, &c. ; that being a voluntary offer on the part of said Boorman.

That in consequence of this agreement he, Ryerson, did not proceed to get the said decree opened and to set up the said defence to the said bill.

That ever since the making of the said agreement the said complainants have treated the said debt as a debt of $20,000 ; that they balanced their books, leaving this sum as the debt due ; and that he, Ryerson, has since paid the interest on the said sum of $20,000 to January 1, 1846, he having agreed to pay such interest ; and that this interest was received by the said complainants in full for the interest on the said claim ; that he, Ry-

erson, has also paid to the solicitor of the complainants his taxed costs in the said suit and his counsel fee of $20, as agreed upon; and that he also paid to the Sheriff his costs on the said execution, calculating his per centage upon the said sum of $20,000; that the said complainants directed the said Sheriff to desist from selling, and he thereupon desisted.

That by reason of said agreement made to settle the said law suit, and reduced to writing as aforesaid, and in part performed as aforesaid, the said decree ought to have been credited so as to reduce the amount to $20,000, as agreed upon, and to have the said amount payable in instalments, at the several times agreed upon.

That the property covered by the said mortgages consists of nineteen different tracts of land, (stating them).

That, the said sum of $20,000 being agreed to be paid in instalments, he is advised that it should have been referred to a Master to see what amount was due the complainants, and that a part only of the mortgaged premises, sufficient to pay the amount so reported to be due, should have been decreed to be sold; and that the said complainants ought not to have sold the whole of the said mortgaged premises, inasmuch as only a part of the said $20,000 was then due and payable.

That the Sheriff of Passaic advertised the mortgaged premises to be sold under the said decree and execution, and adjourned the sale to October 15, 1847; and that he, Ryerson, called on the said Sheriff the day before the said sale, to know for what amount he intended to sell the said property, and the said Sheriff answered that he intended to sell the same for the full amount of the debt, interest and costs, as directed by the said execution.

That, on the said 15th of October, the said Sheriff sold the said 19 tracts under the said execution; and that one John T. Johnson bid for the said 19 tracts $15,000; and that no other bid was made; and that the property was struck off to him for that sum.   That the said J. T. Johnson attended the said sale as the agent of the said complainants, and gave directions as to the sale; and that he, Ryerson, believes that the property was bought for the said complainants; that the deed has not yet been given, but is to be given on the 1st day of November next.

11

That the property was advertised for sale by the Sheriff in the Paterson Intelligencer, and that the description of the 15th lot is not correctly given, but contains a part of the 15th lot and a part of the 19th lot also ; that the description of the 16th lot is not correctly given, but contains a part of the 16th lot and a part of the 19th lot ; that the description of the 19th lot, being the 3000 acre lot, is altered and wrongly placed in seven different places in the said advertisement, so that no sense can be made of it, as by reference to the said newspaper will appear ; and that the advertisement for the sale of the said property was not inserted in any other newspaper.

That these tracts of land are so situated that most of them could be sold separately ; the first five tracts being more than four miles distant from the other tracts ; that he is advised and charges that the sale of the whole of this property, consisting of 19 different parcels, and containing in all 4490 acres, at one bidding, was illegal ; that it ought to have been sold in parcels ; that a sale as made would prevent any person from bidding except a man of very large property, and would sacrifice the interest of the complainant, especially as the apparent claim of said complainants was very large. He charges that the property so sold by the Sheriff is worth $60,000, and that the sale for $15,000 was a sacrifice of the property ; that the mistakes in the said advertisement affect the whole sale, inasmuch as but one bid was made for the whole property.

The bill prays that the decree may be vacated, to enable him to prove and establish their said agreement, and to ascertain the amount due on the said bonds and mortgages ; or that the decree should stand only for the amount agreed to be due thereon as aforesaid, and also to ascertain how much is due and payable ; and that execution should only issue for the amount that shall be due and payable ; and that, in the meantime, the bidding be opened, and the Sheriff be directed not to deliver a deed to the said Johnson ; and for further relief.

On this bill an order was made directing the Sheriff not to deliver the deed until the further order of the Court.

On the 25th of January, 1848, the defendants Boorman, John-

son and Ayres put in an answer. They say that they, with the defendant Norrie, on and prior to August 10, 1839, were partners, in the city of New York ; but that prior to September 12, 1845, the said firm went into liquidation ; and that Norrie is now and for some time past has been in England.

They say that, the complainant being indebted to the said firm in $12,500 for the purchase of machinery &c. of a steam rolling mill, and in $17,500 for money agreed to be lent and advanced by them to him, of which sum of $17,500 $1,000 had been lent and paid to the said complainant on the 25th of November previous, and the further sum of $12,000 was paid to him in cash and notes equal about to money (discount being allowed) on the 4th of December following, and in conformity with the terms of the agreement in the premises, the remaining sum of $4,500 necessary to make up the said amount of $17,500 was retained to be paid thereafter, when certain improvements should be made on the property mortgaged as hereinafter mentioned ; the complainant being indebted as aforesaid, on the 1st December 1837 executed and delivered to them his bond conditioned for the payment of $30,000 and interest, and to secure the payment thereof, executed, with his wife, at the same time, and delivered to them a mortgage for that amount on property in Passaic county, New Jersey, called the Forge lot, upon which the said machinery was to be erected, and on a part of another lot called the Post farm. That afterwards, the said Ryerson, being desirous of effecting a large loan from other parties on the said property, applied to the defendants to change the security for their said claim, and to give up the said mortgage to be cancelled, and proposed to place in their hands stock of the North American Trust & Banking Company as their temporary security, in lieu of the said mortgage, and such proceedings were had on his said application that, on or about December 6, 1838, the said Ryerson transferred to them 350 shares of the stock of the said Trust & Banking Co., of which, 300 shares were to be held by them as collateral security for his indebtedness to them, in lieu of the mortgage security surrendered, and in no other manner, and the remaining fifty shares were included in the transfer for the temporary convenience of the said Ryerson, and were at his request

transferred, on or about the 9th of January following, to one Wm. Boeraem ; whereupon they cancelled the said mortgage, and gave it up to Ryerson to be cancelled of record ; that the said 300 shares of the said stock remained in the names of the defendants till the 28th of August following, when Ryerson, having executed and delivered to them another bond for $17 500 and a mortgage to secure the same, dated the 10th of August preceding, 75 shares of the said stock were transferred to the said Ryerson, and it was agreed to transfer and surrender 100 shares more of the said stock when certain judgments and a prior mortgage on the property mortgaged to them should be paid off ; which 100 shares were transferred to Ryerson on or about the 7th of September following ; and on or about the 21st of October following, (1839,) Ryerson executed and delivered to the defendants another bond of that date, for $5,000, with a second mortgage on the property previously mortgaged, to secure the said bond ; and on the 26th of said October, 1839, he paid to them $3,000 in cash, and $452 37 for interest that had accrued on his indebtedness to them ; thus reducing the said indebtedness to $22,500, the amount of the said bonds last mentioned ; whereupon the defendants transferred to Ryerson the remaining 125 shares of said stock which had been held by them as collateral security for such indebtedness.

They say that the two bonds and mortgages stated in Ryerson's bill of complaint were given to them as security for so much of the original debt as remained unpaid, and upon no other consideration ; and that the stock referred to in his said bill was the stock of Ryerson, held by them as aforesaid as collateral security for his said indebtedness to them, and in no other manner.

That the said mortgages not being paid, they filed a bill to foreclose, &c. ; that in or about October, 1844, Ryerson and his wife filed a demurrer ; that in January, 1845, the said demurrer was overruled ; that in April, 1845, a decree *pro con.* was taken in default of an answer, and a final decree for sale, to satisfy and pay $27,727 25, the principal and interest due on the said mortgages ; that on or about May 2, 1845, a *fi. fa.* was issued to the Sheriff for the sale of the said premises.

They deny that Ryerson had any good defense to make in the said suit, or that while the same was pending he ever pretended to them or any of them that he supposed he had any defense to make, or that he ever entered into any negotiations with them or with Norrie to their knowledge or belief, to settle any pretended difficulties; or that anything transpired between them to delay or interfere with him in putting in an answer to their bill. And the defendant Boorman denies that pending the proceedings for foreclosure he ever entered into any negotiation with Ryerson for suspending such proceedings in any manner, or gave Ryerson any reason to believe he would do so, other than as follows, to wit: on or about March 25, 1845, Ryerson called on him at his counting-room in New York, and proposed a compromise of the claim above mentioned on the ground of his inability to pay the whole; that this defendant then offered that, provided Ryerson would immediately pay the interest due from February, 1844, with the costs which had then accrued, he would give directions to his solicitor to take a decree for $20,000 only, believing from the representations of Ryerson that the property mortgaged would not sell for more than that amount with interest and costs; and did further offer to allow Ryerson five years to pay the said amount, the interest thereon being paid semi-annually, and $1,000 a year on account of the principal; which arrangement Ryerson promised to fulfil; but he utterly failed to pay the interest due, and costs, or any part thereof; therefore no instructions were given by this defendant to his solicitor to suspend proceedings, or to take a decree for less amount than the whole of the claim.

That the premises were advertised to be sold on the 6th of October, 1845.

Boorman says that, on or about September 12, 1845, Ryerson again called on him and made certain other propositions respecting the payment of said mortgage claim and decree, to prevent a sale of his property, which this defendant, in behalf of the parties in interest, not wishing to purchase the property, agreed to accept if the arrangement should be completed on or before October 1, 1845, and that thereupon he wrote to Mr. Ogden, their solicitor, as follows:

"Mr. P. M. Ryerson has made a proposition to us to preclude a sale of his property under mortgage to us, and we are inclined to accede to it if the arrangement is completed on or before the 1st of October. It is as follows : that he shall, before that period—

1st. Repay you the amount we have paid you for taxed costs and counsel fees, and any other costs incurred and counsel fees due you.

2d. That he shall pay you interest on the sum of $20,000 from February 1, to August 1,                                        $600
and $500 in reduction of the assumed principal of $20,000,     500
                                                          ———
                                          making          $1100
to be paid you for remittance to us free of charge. These payments being made, we are willing that you shall, as our attorney, enter into a stipulation for us that, on the payment as follows of the further sum of $19,500, with interest semi-annually from the 1st of August last till paid, we will discharge him and release the property mortgaged to us. The understood periods for the payment of the said assumed principal sum of $19,500 are : $1,000 on the 1st of February next ; $1,000 on the 1st of August next ; $1,000 on the 1st of February, 1847 ; $1,500 in semi-annual payments of $500 each till the assumed principal is reduced to $15,000.

"This stipulation is given with a reservation of all due rights under the mortgages and decree of sale, provided the stipulated payments of interest and on account of principal are not regularly made to us in New York.

"Mr. Ryerson has further to pay fire insurance on the house for one year, per memorandum subjoined, which we have paid and which has not been included in the decree, and also to pay fire insurance annually on $3,000 on the buildings insured, till the whole debt is cancelled.

"If you see any legal obstacle or objection to the arrangement tending to invalidate our security on the property, these propositions fall to the ground ; otherwise you can carry them into effect, and suspend all further proceedings other than such as are necessary to keep our security alive."

Boorman denies that the said proposition was made or entertained upon any allegation on the part of Ryerson that the mortgages were invalid, or that he should apply to the court to open the decree and permit him to defend on the merits of the cause; and he also denies that the principal of $20,000 was assumed upon any such consideration; but says that, some time before the said proposition was made by Ryerson, the amount of that asset was separated by those interested therein, and was transferred to two accounts; $20,000 thereof to the account of debts considered good beyond a question, and the balance, which then stood at $6091,42, to an account of debts considered doubtful; and that such apportionment was not based upon any idea that the bonds and mortgages could be impeached, but upon their belief that the premises would not yield more than $20,000; and that they have made no alterations in the accounts since the aforesaid proposal was made by Ryerson.

That Ryerson did not make any payment whatever on or before the said October 1, 1845; that the sale was adjourned to November 6, 1845, and from time to time till the 14th of Feb'y, 1846; and that in the latter part of January, 1846, as he is informed by his solicitor, and therefore admits, Ryerson paid up the costs and counsel fees and insurance and Sheriff's costs, and also $1100 on the debt. That Ryerson then urged his inability to pay the $1,000 principal which he stipulated should be paid on the 1st of February, 1846, and asked for further time; and thereupon this defendant applied the sum of $1100 so received from Ryerson to the payment of the interest on $20,000 for eleven months, up to the 1st of January, 1846, and consented, by a letter written to Mr. Ogden, to receive $1,000 of the principal on the 1st of July, 1846; $1,000 on the 1st of January, 1847; $1,000 on the 1st of July following; $500 on each of &c., and the balance of the assumed principal of $20,000 on the 1st of July, 1850, and interest semi-annually on the 1st of July and January in each year.

The defendants say that no agreement was ever entered into by them with Ryerson, nor by Mr. Ogden on their behalf, other than the letters of instruction before referred to. That Ryerson failed to pay any principal or interest on the 1st of July, 1846;

that in November, 1846, no further payments having been made, they instructed the Sheriff to sell; that in February, 1847, they passed the management and agency of the said claim into the hands of the defendant John T. Johnson, who has since that time had the control and direction thereof.

That after the property was re-advertised, Ryerson applied for postponements upon promises to make payments on account; but without pretending that he was entitled to have the decree opened or corrected, or that a part only of the mortgaged premieses should be sold to meet the payments he had neglected to make semi-annually.

That they are informed by the defendant J. T. Johnson, and believe, that Ryerson applied to him from time to time, after he took the management of the case, for further adjournments, and that the sale was frequently postponed, with his consent, upon Ryerson's assurances that he would make payments on account of the execution; but that he paid no money except $200 in March last; and that in the communications between Ryerson and the said Johnson, Ryerson did not pretend that there was any existing agreement between him and the defendants for a reduction of the decree, or for deferring the payments; but on the contrary, that he made various and repeated new proposals to said Johnson to obtain time to discharge the amount due on the said decree.

They admit that, after the mortgaged premises had been correctly advertised in the newspaper for several insertions, by some accident or mistake on the part of the printer, or through some other means, transpositions occurred whereby the descriptions of some of the lots became intermixed with others and confused; but they say they are credibly informed and believe that the advertisement from which the Sheriff read the descriptions at the day of sale was correct; and that there was no suggestion or complaint made by the complainant, or any other person, at the sale, that the advertisement in the newspaper was confused or unintelligible. That the complainant Ryerson and his counsel were both present when the said property was exposed for sale; that neither of them objected to the Sheriff's proceeding to sell, or stated any irregularity in the advertisement in the newspaper;

nor requested that the property should be put up in separate parcels, or that any part should be offered by itself; but, on the contrary, that either the said Ryerson or his counsel, in answer to a question propounded, distinctly stated that Ryerson had no objections to make against the Sheriff's proceeding with the sale.

That they are informed and believe that the Sheriff did not name any sum which was to be raised by the sale ; and that they did not instruct him to sell for the costs and payments that had been made by Ryerson ; nor do they believe that the Sheriff told Ryerson that he intended to sell for the said costs and payments.

That they believe the property to be more valuable together than if broken into parcels ; that it would be difficult to fix a proper and separate value on each parcel ; and that by such a sale the security of their debt would be greatly jeoparded.

On this answer, a motion was made to vacate the order staying the sale.

*F. T. Frelinghuysen* in support of the motion.

*B. Williamson* and *A. S. Pennington* contra.  They cited 1 *Green's Ch.* 182, 196, 7.

THE CHANCELLOR.  I think the sale should be set aside, and the property be advertised anew.  As to the manner in which the property shall be sold, the like order will be made as was made by agreement of counsel for the sale of the same property in the case of the Greenwich Bank against Ryerson ; which was, that the property should be sold in parcels if Ryerson requested it.

As to the question whether the amount of the execution is to be held to be reduced to $20,000, I will hear any testimony the parties may offer in time for the consideration of it before the property can be brought to a sale.

Motion denied.